Robin Marzullo is here for Gomez-Gomez and Jermaine Sider is here for the government. Mr. Wise, I want to thank you and Ms. Baer for your service. You were both appointed by the court. The court appreciates your service. Thank you very much. All right, Mr. Marzullo, you may begin. May it please the court, counsel, Ron Marzullo on behalf of Jose Manuel Gomez-Gomez. There are two issues before the court on this appeal. They are both guideline issues. The first is that I will address is the weight issue. Secondly, I'll address the role issue. I suggest to the court that these are basically fact-based arguments as to the weight and I would inform the court that there are no photographs of the bulk contraband in this case. The Coast Guard, in their report, stated that they had seized 28 bales of contraband weighing approximately 560 kilograms of packaged bulk contraband. That is shown in the government's appendix to their brief at Exhibit 6. It's the Coast Guard Situation Report or called SITREP. Let me ask you this. It seems like your client did pretty good with the district court. He got 120 months below the guidelines. He got safety valve relief. The guideline range was 135 to 168 months and the judge said that she would impose the same sentence regardless of drug quantity. I don't understand why, if there was an error on her part, why it would not be harmless given our decision in United States v. Barner that if there's an error in the sentencing guidelines calculation, it's harmless if the district court clearly states, which it seems like she did here, that she would have imposed the same sentence without the error. Your Honor, the calculation that the district court used was based on 560 kilograms. That was not reflected in the lab report. The lab report considered the representative sample that was sent to the lab and that was 25, I believe, .3 kilograms bulk. The lab then determined 20 point something kilograms of net weight. What we had asked the court, the district court, was to use that lab report, which is the only indication of net weight, and look at the 560 kilograms and then apply that percentage, which I believe was something like 20.3% less the net weight than the bulk weight, which would have provided for a base offense level of less than 450 kilograms where the district court had found level 38. I don't believe that it was harmless error on the part of the judge because if that was the case, then the guidelines would have been less than the level that the district court determined at level 31, which would have been 120 months. It would have lowered it to base offense level 36 and then applying the court's acceptance of responsibility and the variance would have brought it down to a level 29, which would have been 87 to 107 months. That's where we believe that the court erred, the district court erred in calculating the guideline as to weight. May I proceed as to roll, Your Honor? Very. Thank you. As to roll, Mr. Gomez objected that he did not receive a roll reduction. As to roll, Mr. Gomez and the district court acknowledged that Mr. Gomez, and that was in the first sentencing hearing specifically, that Mr. Gomez had raised a roll argument and that he had identified discernible and identifiable individuals. The problem that you have here is that this argument was not raised in the prior appeal. That's true, Your Honor. It's not raised in the prior appeal. It's waived because of the law of the case doctrine. That is true, Your Honor. It was not raised. However, at the resentencing hearing, the government specifically agreed that the district court should consider roll and it was argued by the defense and also by the government. The district court then denied a roll reduction again, but it was heard and our position is that the government, by agreeing to hear it in the resentencing hearing, the government waived any argument. When it goes back, you can raise other issues other than what was specified in the mandate? The government agreed to do that, Your Honor, and therefore, it's our position that it was not waived whenever it was raised on appeal. See what the government has to say about that.  All right. Thank you, Mr. Marzullo. Ms. Sider, for the government. May it please the court. The district court did not clearly err in making any of its findings to determine a base offense level of 38 because the quantity of cocaine here clearly exceeded the 450 kilogram threshold and that error, in any event, is harmless, nor did the court clearly err in making its minor rule findings. We'll turn to the drug quantity aspect first. I just want to clear this idea that the lab report was the sole evidence of the weight. It was not. There was several pieces of other evidence that clearly showed that the total quantity of cocaine involved here was 560 kilograms. You start with the fact that there's 28 bails and 560 bricks total seized and the evidence established that each one of those bricks weighed approximately one kilogram of cocaine. You had the agent Erosari's testimony that in his 17 years experience, which includes offloading tens of thousands of kilograms of cocaine, a brick of compacted cocaine is called a kilo or a kilogram because it contains a kilogram of cocaine. That general matter is corroborated by the specific bricks in this case. When the DEA chemist who tested the 20 bricks in the representative sample, she individually weighed nine of those bricks. Each one of those contained one kilogram of cocaine. Those weights are set out on the last page of government's exhibit five at the bottom of the worksheet. She concluded that those 20 bricks weighed, contained approximately 20.1 kilograms of cocaine. It's established that these, and we have the pictures of those 20 bricks, and they're all the same size and wrapped the same. All that evidence proves that each brick contained approximately a kilogram of cocaine. It does seem like Mr. Gomez got hosed here because the DEA destroyed all the evidence. He never had an opportunity to have his own expert examine the evidence. That's classic due process violation, isn't it? No, it's not. As the district court found, there was no evidence that the destruction of those drugs were done with any bad faith. It was not done with the intent to deprive Mr. Gomez of his opportunity to independently weigh those drugs. There was no ... It's like bad faith when the government says don't, the scheduling order says don't destroy the evidence, and the government destroys it anyway. There was a violation of the scheduling order, right? It's not clear that whether there was an actual, whether that pre-trial discovery scheduling order even applies at sentencing is not clear, but in any event, just the failure to follow a procedure or order in and of itself isn't necessarily bad faith. That's what this court's 2019 case, Davis v. Seller, says. The failure to follow a protocol is not bad faith unless there was some kind of evidence that the departure from the protocol was done with the specific intent to deprive the defendant of material . . . This isn't a really good practice. This isn't a good practice to destroy the evidence before the defendant has an And it was a clear violation of the scheduling order. Well, it's not a clear violation, well, about whether it's a good . . . Didn't the court say don't destroy the evidence? That was in the pre-trial discovery order, correct? And then the government destroyed the evidence. Correct, but the government didn't do so at the point that the government destroyed the evidence. There was no reason to believe that the actual physical drugs would materially benefit or be exculpatory to Mr. Gomez's defense as to his base offense level. That's not the government's decision. If the court says don't destroy the evidence and the government just completely disregards that and says, well, it's not necessary that we keep it, that's not a clear violation of the scheduling order? But that is relevant to determining whether there was bad faith or due process violation. This isn't a claim about a violation of a discovery order. He's raising that as a circumstance to show that there was bad faith here. And that in itself, just the failure to follow, assuming even if that discovery order, pre-trial discovery order applied to sentencing, it doesn't, that in and of itself, the failure to follow that, that in and of itself doesn't necessarily show bad faith. And that's exactly what the district court found here. And consider that the court said there was no deliberate attempt to destroy the evidence in order to deprive Mr. Gomez of his opportunity to weigh the drugs. And this isn't a case where there's nothing in this record or nothing before the prosecution for them to believe that Mr. Gomez's independent weighing of the drugs, of the physical cocaine, would help his defense in the base offense level 38. Recall this, the threshold amount is 450 kilograms. All of the evidence proved that the weight of cocaine involved here was 560 kilograms. We're not on the cusp of 450 kilograms. So there's no, there was just no basis or reason that the government would think that if he independently weighed this evidence, he could show that it would be below 450 kilograms. What's your best guess as to why the weight of the cocaine ballooned from the time it was weighed and being processed by the DEA? It didn't balloon. It didn't balloon. The 560 kilograms quantities noted in the Coast Guard situation report is referring to the net weight of cocaine. Based on the evidence in this record, it's clear that that's referring to the net weight of the cocaine. And that tracks exactly with the evidence, with all the other evidence. There's, you know, I'd point out that there's three times that the 560 kilogram amount is noted in the situation report. Two of those times specifically say, seized 560 kilograms cocaine, 560 kilograms cocaine found. The Coast Guard was talking about the net weight of the cocaine. They weren't talking about including the packaging. And that's clear based on the other evidence that just as a general matter, everyone knows that a brick of cocaine contains a kilogram of cocaine. And specifically in this case, in the representative, shown by the representative, the 20 bricks in the representative sample, each brick contained a kilogram of cocaine. So when the Coast Guard said 560 kilograms of cocaine, that they had seized 560 bricks, it's because it was, they were approximating that each brick contained a kilogram of cocaine. So the district court didn't clearly err in making that finding, and nor did it clearly err in finding the lack of bad faith for the destruction of the drugs. And I'll also say, and I'll also point out that even if we discarded, just set aside the evidence of, taken from the DA's weighing of the physical drugs, the evidence in this record would still support the court's finding by a preponderance of the evidence. And quickly about minor role, the, Mr. Gomez did waive this by not raising it on direct appeal the first time, but we agree that we waived it at the resentencing when we said that the court was not bound by its original, by its original findings at the original sentencing. But . . . Wait a minute, I don't understand. Did he waive it or not? He did waive it. But Mr. Marzullo says that when it came back on remand, the government agreed that the Correct. And so we, we waived his waiver. And so the issue, you know, it's not waived. But on the merits, the court's finding was just not clearly erroneous. And for all the reasons that we set out in our brief, I mean, Mr. Gomez is the prototypical average participant in this offense of possessing cocaine with the intent to distribute it while aboard a vessel on the high seas. He and two other mariners were driving, piloting this ship, this vessel at a skilled work integral to the success of the offense. He, all of them had the same role. Each of them were average, average participants. Unless this court has any further questions. I think we have your argument, Ms. Sider. Thank you. Thank you. We ask this court to affirm. Mr. Marzullo, you've reserved some time for rebuttal. Thank you, Your Honor. Your Honor, first of all, the, the lab report, the photo that the government had in, in their appendix, and I apologize, I don't recall the exact exhibit number, but the photo of the 20 units of contraband that was sent to the lab, that photograph clearly shows that those units were packaged. They are not just, you know, contraband, it, or cocaine. They are packaged, and that is very clear in that photograph. So whenever the lab received the 20 units and weighed those 20 units, the, the units themselves as packaged were in excess in each one, in excess of one kilogram. And that's why the lab report showed that the gross weight received was 25, and if I recall, the lab analyzed those, those units and came up with a net weight, I believe it was 20.1, I, I stand corrected, the gross was 25 point, well, I think it was 25.5. 25 plus. Exactly. And, and 20.2 or something like that. Yes, Your Honor, thank you. And so, it's our position that the, the court should have looked at that percentage and then applied it to the 560 kilograms to arrive at the correct net weight, and obviously, as mentioned, the defense was not provided an opportunity to itself examine the bulk. As far as the, how it, the gross rose to such a high quantity, and I believe it was 656 kilograms, that, according to Agent Irizarry, he had repackaged the, the bulk that he had received, which was 540 kilos of bulk. He repackaged it and sent it to storage. So that would account for the large increase, I believe it was something like 93 kilograms there. As far as the scheduling order, the court's order, that order, as far as the lab report and as far as the destruction of the evidence, clearly stated that it was a criminal process order and not just limited to trial purposes. I would also, and it's in, in the brief, suggest to the court that Section 28 CFR 50.21 would should have been notified of the destruction in a 60-day notification. The defense was not provided with any indication that 28 CFR 50.21 was complied with, and that would have been another protection from the destruction of the evidence without notifying  Thank you, Your Honors. Thank you. Marcia Lewin, Ms. Sider.